1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES LESLIE HARRIS,

11              Petitioner,              No. CIV S-08-CV-2333 CHS

12        vs.

13   TOM CAREY,

14              Respondent.             ORDER

15   _____/

16                          **I.  INTRODUCTION**

17        Petitioner, James Leslie Harris, is a state prisoner[1] proceeding pro se with a petition

18   for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  Petitioner challenges the constitutionality

19   of his 2006 jury conviction in the Shasta County Superior Court for first degree robbery.

20   */////*

21   _____

22        [1] Although Petitioner notified the court of a change in his mailing address on November 5,
     2009, the California Department of Corrections Inmate Locator reveals that he is currently
23   incarcerated in state prison at California Medical Facility, Vacaville.

24        [2] The "in custody" provision of title 28, section 2254 of the United States Code is satisfied
     so long as the petitioner was incarcerated at the time the petition for writ of habeas corpus was filed.
25   *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citing (*Carafas v. LaVallee*, 391 U.S. 234, 238 (1968);
     *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).  Here, the record indicates that, at the time Petitioner
26   filed his petition, he was incarcerated at California State Prison, Solano County, thus satisfying the
     "in custody" requirement.  Pet. at 1.

                                    1

## II.  ISSUES PRESENTED

Petitioner presents four grounds for relief.  Specifically, the claims are as follow, verbatim:

> (1)  Petitioner submits that substantial evidence was presented that showed Petitioner's good faith belief in his claim of right to the property at issue in the robbery charge.

> (2)  Petitioner submits that the court had a sua sponte duty to instruct the defense of claim of right as a material issue that was supported by substantial evidence and its failure to do so was reversible error.

> (3)  Did the lower court err in affirming that the trial [court] did not abuse its discretion in permitting the admission of evidence of a prior offense, in contradiction of Evidence Code 1101(b)?

> (4)  Petitioner submits that the lower court erred in its determination that the trial court did not abuse its discretion when imposing concurrent sentences for Counts 3 and 4.

Both parties have consented to jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including trial and entry of final judgment, with direct review by the Ninth Circuit Court of Appeals, pursuant to 28 U.S.C. § 636(c)(1).

## III.  FACTUAL BACKGROUND

The basic facts of Petitioner's crimes were summarized in the unpublished opinion[3] of the California Court of Appeals, Third Appellate District, as follows:

> A.  *Background and Prior Misdemeanors*

> Defendant and Johnson had been a couple for about six years. Defendant acted like a father to Johnson's three children.  Problems developed in their relationship after they moved from Ohio to California in 2003.   Although they lived separately at times, defendant contributed to the financial maintenance of the household on a regular basis.

> In February of 2005, defendant and Johnson were living separately. On February 8, defendant came to Johnson's house for dinner with

---

[3]The appellate court's opinion in *People v. James Leslie Harris*, No. C052549, was lodged in the record as Document 5 on July 20, 2009.

2

her permission. After dinner, defendant started pacing, going through papers, and making accusations against Johnson. Fearing defendant would become enraged, Johnson told him she should take him home, and defendant agreed. Upon arriving at his residence, defendant refused to leave the car. He tried to grab the keys form [sic] the ignition, but Johnson got them first and hid them.

Defendant got out of the car, came around, opened the driver's door, and began struggling with Johnson for the keys. She may have kicked him. Defendant punched her in the face with a closed fist, leaving a bruise on her chin. When Johnson got home, she called the police.[FN2]

> FN2   Defendant was convicted of corporal injury to a cohabitating person (§ 273.5), a misdemeanor, based on this incident and was on probation for it at the time of trial. The court admitted evidence of this conduct as part of the prosecutor's case-in-chief in relation to count 5. The parties stipulated to the fact of conviction.

On October 20, 2005, at about 4:00 a.m., defendant was at Johnson's residence. Johnson saw that he was in the beginning stages of what she called "flipping out," where he would act paranoid, go through papers, and accuse her of being unfaithful. Johnson tried to leave the house, but defendant took her car keys to prevent her from leaving. Johnson left on foot and started walking down the street. Defendant followed after her. He grabbed her purse to get her checkbook. As defendant pulled on the purse, Johnson sprayed him with mace. She called the police, and the officers instructed defendant to go home and get some sleep. Defendant did not try to rest, so Johnson called the police again.[FN3]

> FN3   Defendant was convicted of battery on a cohabitant (§ 243, subd.(e)(1)), a misdemeanor, based on this incident and was on probation for it at the time of trial. The court admitted evidence of this incident as part of the prosecutor's case-in-chief in relation to all charges after it determined the incident followed a pattern very similar to the charged offense.

After this latest incident, a police officer told Johnson that he would call child protective services to have her children removed from the home if she did not obtain a restraining order against defendant. She obtained the order, which directed defendant not to have any contact with Johnson or her children, and to stay at lease [sic] 100 yards away from them. The order was still in effect as of January 2006.

However, defendant and Johnson were together often. They were seeing each other on a daily basis from mid-December through the first week of January 2006. Defendant occasionally stayed at

Johnson's house. He continued to contribute financially to the household. Defendant even loaned Johnson money to purchase Christmas presents for the children. Johnson would deposit his money into her checking account, and she would give him money from that account whenever he asked for it.

Defendant asked Johnson to drop the restraining order. She did not because she was concerned that he would "flip out" again. She wanted to be sure defendant took his medications and enrolled in anger management and counseling programs.

A few days before January 7, 2006, defendant disappeared with Johnson's car for a few hours. That was how incidents had begun in the past, with defendant disappearing and staying out of contact for a few hours.

B. *Charged Offense*

On January 7, 2006, at about 5:00 p.m., defendant went to Johnson's house and asked Johnson to repay him some of the money he gave her for Christmas presents because he was broke and could not buy food. Johnson told defendant she did not have any money to give him. Defendant became angry and accused Johnson of using him. Fearing a confrontation, Johnson took her nine-year-old daughter, Catherine, to work with her that evening at a hospital where she had a work order to repair a copy machine and was allowed to work late at night.

During the evening, defendant called Johnson about 10 times on her cell phone, but she did not answer. Defendant left voice messages accusing her of using him, taking all his money, and leaving him. He accused her of having a boyfriend, and he threatened suicide. He said he would die before he would go to jail and threatened to jump off a bridge.

Johnson and Catherine arrived home at around 11:30 p.m. Johnson did not know if defendant was still in the house, but Catherine saw defendant asleep on the couch and later told her mother. Johnson took her purse and Catherine to bed with her in case they had to leave the house quickly. She also had three cell phones with her: a work phone on her hip, a personal phone in her purse, and another personal phone she had placed in Catherine's pocket. The account to the two personal cell phones was in Johnson's name, and the money defendant put into Johnson's checking account helped pay for the personal cell phones. Johnson primarily used the phone in her purse, and defendant primarily used the one in Catherine's pocket. Johnson had taken the phones to bed a few times before for safety reasons when she and defendant had problems.

At about 2:30 a.m., defendant came into Johnson's room and turned on the light. He was angry and accused Johnson of being at

someone's house that evening because she had not answered her cell phone. He demanded to see Johnson's cell phones to see what numbers she had called. Johnson gave him her work phone she had on her hip but refused to give him her personal cell phone. Defendant grabbed at Johnson's purse and, in the ensuing struggle, pulled Johnson off the bed and onto the floor. Defendant got the purse away from Johnson and took out the cell phone and Johnson's checkbook. He checked the numbers on the phone and asked to see the third phone, which, unbeknown to him, was in Catherine's pocket. Johnson told him it was out in her car.

Defendant went out to Johnson's car to search for the third cell phone. He came back into the house and called the third phone. He heard it ring in Catherine's pocket. He grabbed Catherine by the arms, threw her onto the couch, and tried to get the phone out of her pocket. Johnson then began pulling on defendant, and defendant turned and punched her in the chest. Returning his attention to Catherine, defendant got the phone from her, and he checked it to see what numbers had been called. He somehow had also obtained a set of keys belonging to Johnson. Catherine tried to leave the house and go for help, but when defendant ordered her to go to her room, she complied.

Johnson was screaming. Defendant put his hand over her mouth and repeatedly told her to be quiet. He also said he could not go back to jail and he would kill her. He said, "I can't go back to jail. Please don't call them. If they take me back, they'll have to put me in for murder . . . ." Catherine heard him say he would kill Johnson if she put him in jail.

Johnson opened the front door at one point, but defendant closed it and said he wanted to talk. Defendant took her shoes so that she could not leave. He said several times that he would give her everything back if she promised not to call the police.

Because she was frightened and wanted defendant to leave, Johnson promised not to call the police. Eventually defendant calmed down. He gave back the three phones and the checkbook and then he left. As soon as he left the yard, Johnson took Catherine out and they sat in her company car. That car was equipped with a panic button that sounded the horn and flashed the lights. When defendant appeared at the driver's side window, Johnson immediately hit the panic button. She also called 911.

Johnson later found her set of keys on the ground near the driver's side of her car.

(Lodged Doc. 5 at 3-9).

Petitioner was charged with (1) first degree robbery, CAL. PENAL § 212.5(a); (2) first

degree residential burglary, CAL. PENAL § 459; (3) making criminal threats, CAL. PENAL § 422; (4) false imprisonment by violence, CAL. PENAL § 236/237; (5) misdemeanor battery on a non-cohabitating spouse, CAL. PENAL § 243(e)(1); and (6) misdemeanor violation of a restraining order, CAL. PENAL § 273.6(a).  Following a jury trial, Petitioner was found guilty on all charges except for first degree residential burglary.  Petitioner was sentenced to four years imprisonment on the first degree robbery charge, and concurrent terms of two years each on the charges for making criminal threats and false imprisonment.  Petitioner was sentenced to time already served on the charges for misdemeanor battery on a non-cohabitating spouse and misdemeanor violation of a restraining order.

Petitioner appealed his convictions to the California Court of Appeal, Third Appellate District.  The appellate court affirmed his convictions on November 7, 2007 with a reasoned opinion.  Petitioner then petitioned for review in the California Supreme Court, which the court denied without comment on February 13, 2008.  This petition was filed on October 2, 2008. Respondent filed an answer on July 20, 2009, and Petitioner filed his traverse on August 21, 2009.

## IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (2001); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000).  Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable

6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Although "AEDPA does not require a federal habeas court to adopt any one methodology," *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), there are certain principles which guide its application.

First, AEDPA establishes a "highly deferential standard for evaluating state-court rulings." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  Accordingly, when determining whether the law applied to a particular claim by a state court was contrary to or an unreasonable application of "clearly established federal law," a federal court must review the last reasoned state court decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Provided that the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief.  *Lockyer*, 538 U.S. at 76; *Downs v. Hoyt*, 232 F.3d 1031, 1035 (9th Cir. 2000).  Conversely, when it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, AEDPA's deferential standard does not apply and a federal court must review the claim de novo.  *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

Second, "AEDPA's, 'clearly established Federal law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in U.S. Supreme Court decisions." *Robinson*, 360 F.3d at 155-56 (citing *Williams*, 529 U.S. at 381).  In other words, "clearly established Federal law" will be " the governing legal principle or principles set forth by [the U.S. Supreme] Court at the time a state court renders its decision." *Lockyer*, 538 U.S. at 64.  It is appropriate, however, to examine lower court decisions when determining what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir. 2000).

Third, the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have "independent meanings." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  Under the "contrary to" clause,

a federal court may grant a writ of habeas corpus only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405.  It is not necessary for the state court to cite or even to be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not contain "a formulary statement" of federal law, but the fair import of its conclusion must be consistent with federal law. *Id*.

Under the "unreasonable application" clause, the court may grant relief "if the state court correctly identifies the governing legal principle...but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694.  As the Supreme Court has emphasized, a court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410.  Thus, the focus is on "whether the state court's application of clearly established federal law is *objectively* unreasonable." *Bell*, 535 U.S. at 694 (emphasis added).

Finally, a petitioner bears the burden of demonstrating that the state court's decision was either contrary to or an unreasonable application of federal law. *Woodford*, 537 U.S. at 24 ; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

## V.  DISCUSSION

### A.    Sufficiency of Evidence in Support of the Robbery Conviction

Petitioner claims that insufficient evidence supported his jury conviction for robbery under section 211 of the California Penal Code.  In support of his claim, Petitioner contends that he took the property in question with a good faith claim of right to the property, thus negating the felonious intent requirement for robbery.  In addition, Petitioner argues that he did not intend to deprive Johnson, the property's owner, of possession of the property permanently.

The California Court of Appeal, Third Appellate District, considered and rejected

Petitioner's sufficiency of evidence claim on the merits, explaining its reasoning as follows:

> Defendant contends insufficient evidence supports his robbery conviction. Specifically, he claims the evidence does not show he took property not belonging to him with the intent to deprive Johnson of it permanently. We disagree.

> The elements of robbery are well established. "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) The requirement of a felonious taking calls for the same intent required of larceny: "the intent, without a good faith claim of right, to permanently deprive the owner of possession." (*People v. Davis* (1998) 19 Cal.4th 301, 305; *People v. Green* (1980) 27 Cal.3d 1, 57.)

> Two factors of the required showing of intent are at issue here. The first is taking the property without a good faith claim of right. Taking property *with* a good faith claim of right negates the felonious intent required to establish robbery. "It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent." (*People v. Butler* (1967) 65 Cal.2d 569, 573.) "[T]he availability of the claim-of-right defense to robbery was envisioned by the Legislature and incorporated into the statutory definition of that offense (§ 211), for robberies in which the defendant sought to recover specific property for which he believed in good faith he had a bona fide claim of ownership or title, that is, a recognition that one cannot feloniously intend to steal one's own property." (*People v. Tufunga* (1999) 21 Cal.4th 935, 953, fn. 5) [defense applies to specific items of property, not to claims for debt collection.].) The defense applies even if the defendant takes the property by force. (*Id.* at p. 949.)

> Although a defendant does not lose this defense if his belief in a claim to the property is mistaken, he does lose the defense if his belief is not held in good faith. "'Whether a claim is advanced in good faith does not depend solely upon whether the claimant believes he was acting lawfully; the circumstances must be indicative of good faith.' [Citations.] For example, the circumstances in a particular case might indicate that although defendant may have 'believed' he acted lawfully, he was aware of contrary facts which rendered such a belief wholly unreasonable, and hence in bad faith." (*People v. Stewart* (1976) 16 Cal.3d 133, 140.)

> The second intent factor at issue here concerns the intent to deprive the owner of possession permanently. The word "permanently" as used in this context is not to be taken literally. (*People v. Avery* (2002) 27 Cal.4th 49, 55, *People v. Davis*, *supra*, 19 Cal.4th at p. 307.) "The reference to the intent to permanently deprive is merely a shorthand way of describing the common law requirement and is

not intended literally.   Thus, to determine the exact nature of California's intent requirement, we must turn to the common law." (*People v. Avery*, *supra*, 27 Cal.4th at p. 55.)

Our Supreme Court has found in the common law several categories of arguably temporary takings that nonetheless were determined to indicate the defendant intended to permanently deprive the owner of possession.   These categories include when the defendant intends to: (1) "sell" the property back to the owner; (2) claim a reward for "finding" the property; (3) return the property for a "refund," (4) take and use the property temporarily and then abandon it in circumstances where the owner is unlikely to find it; or (5) take the property for a period of time long enough to deprive the owner of a major portion of its value or enjoyment.   (*People v. Avery*, *supra*, 27 Cal.4th at pp.55-56; *People v. Davis*, *supra*, 19 Cal.4th at p. 307.)[FN4]

> FN4    At trial in this matter, the trial court instructed the jury on the intent element using subparagraph (5) above.   The court stated: "To prove that the defendant is guilty of [robbery], the People must prove that . . . he intended to remove [the property] from the owner's possession for so [*sic*] an extended period of time the owner would be deprived of a major portion or of the value or enjoyment of the property."   The Attorney General does not pursue this theory here on appeal, and for good reason.   No evidence in the record supports a conclusion that defendant's taking of Johnson's property denied Johnson of a major portion of those items' value or enjoyment.

With these principles underlying the two intent factors in mind, we turn to apply them to the defendant's taking of Johnson's property. Our task is to determine whether substantial evidence supports the jury's conclusion that defendant took these items without a good faith belief in a claim of right to them and with the intent to deprive Johnson of them permanently.

We note the Attorney General limits his argument to the checkbook and Johnson's personal phone.   He does not concede that defendant had a valid claim of right to the phone in Catherine's pocket, or that Johnson's purse and work phone were not part of the robbery. Nonetheless, he directs his argument only to the checkbook and Johnson's personal phone because, he asserts, the elements of robbery "are clearest" as to those items.   We will therefore also limit our discussion to those items.

A.  *The checkbook*

Defendant argues he had a claim of right to the checkbook he took out of Johnson's purse.   He contributed money that Johnson put into the account, and Johnson gave him money from the account

1      whenever he asked.  Substantial evidence, however, supports the
       jury's finding that defendant did not have a good faith belief in a
2      claim of right to the checkbook.

3      The checkbook itself was Johnson's, and defendant's behavior
       indicates he was well aware of that fact.  The account was solely in
4      Johnson's name.  Defendant was not authorized to write checks on
       that account, and he never did.  If he actually believed he had a claim
5      of right to this checkbook, he would not have felt obligated to ask
       Johnson for money from the account whenever he needed it.  He
6      instead could have simply written himself a check.  Defendant's
       giving money to Johnson for her use and put [sic] in the account did
7      not entitle him to claim an interest in the actual checkbook.
       Substantial evidence supports the jury's finding that defendant did
8      not in good faith believe he had a claim of right to the checkbook.

9      B.  *Johnson's personal cell phone*

10     Defendant claims there is no substantial evidence that he feloniously
       intended to take Johnson's phone that he found in her purse.  He
11     asserts the evidence shows he intended only to see the phone, not
       take the phone.  He also argues that he had a claim of right to the
12     phone because he contributed funds to the household's expenses.

13     Substantial evidence supports the jury's finding of intent.  A
       temporary taking has been deemed to be permanent when the
14     defendant makes returning the property contingent on the victim
       performing some act, such as purchasing the property back or paying
15     the defendant a reward.  (*People v. Davis*, *supra*, 19 Cal.4th at
       pp.309, 310-311.)  By conditioning the return, the defendant creates
16     a substantial risk of permanent loss, because if the victim does not
       perform the requested act, the defendant has a strong incentive to
17     keep the property in order to conceal the theft.  (*Ibid.*)

18     Here, defendant conditioned his returning the property on Johnson
       agreeing to a promise defendant had no right to extract.  If Johnson
19     had not agreed, defendant would have had a strong incentive to leave
       the house with the phones, thereby permanently depriving her of
20     them, to ensure Johnson did not call the police.

21     Defendant cites to Johnson's testimony as proof of lack of intent.
       Johnson stated defendant went for her phone so he could see what
22     phone calls she had made.  However, if viewing her phone calls was
       his only purpose, he would not have kept the phone after seeing the
23     numbers.  He would have dropped it like he dropped the purse.  His
       maintaining possession of the phone after obtaining it, along with his
24     expressly conditioning its return, constitute substantial evidence that
       defendant intended to deprive Johnson of the phone permanently.

25
       Even if that is so, defendant asserts he had a good faith belief in a
26     claim of right to Johnson's phone.  He bases this argument on

                                      11

Johnson's testimony that both she and defendant used both of the personal cell phones.  Also, defendant helped pay for the cell phones and for the family's maintenance.

The test here is whether substantial evidence supports the jury's conclusion that defendant did not have a good faith belief in a claim of right to Johnson's personal cell phone.  We conclude that such evidence exists.  The cell phones and the cell phone account were exclusively in Johnson's name, and this particular phone was recognized by everyone, including defendant, to be Johnson's phone.  That defendant contributed, or gifted, funds to Johnson for her use to meet the family's expenditures could not raise in him a reasonable belief that he had an ownership interest in her phone.  We will not disturb the robbery conviction on this basis.

(Lodged Doc. 5 at 9-15.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  *Juan H.V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  The United States Supreme Court has  established a two-step inquiry for considering a challenge to a conviction based on the sufficiency of the evidence.  *Jackson v. Virginia*, 443 U.S. 307 (1979).  *See also U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010).  First, the court considers the evidence at trial in the light most favorable to the prosecution.  *Jackson*, 443 U.S. at 319.  The prosecution is not required to "rule out every hypothesis except that of guilt," and the reviewing court, "when faced with a record of historical facts that supports conflicting inferences, must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Wright v. West*, 505 U.S. 277, 296-97 (1992) (internal citations omitted).  *See also Nevils*, 598 F.3d at 1164.  Indeed, it is the province of the jury to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  *See also Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility

of witnesses is generally beyond the scope of review."); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*."). Thus, a reviewing court "may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Nevils*, 598 U.S. at 1164 (citing *Jackson*, 443 U.S. at 318-319).

Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 318. "At this second step, however, a reviewing court may not ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding." *Nevils*, 598 F.3d at 1164 (internal quotations omitted) (emphasis in original). The second step requires reversal of the verdict "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id*.

Sufficiency of the evidence claims are judged by "the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16. Robbery is defined by the California Penal Code as "the felonious taking of personal property in the possession of another from his person or immediate presence, and against his will, accomplished by means of force or fear." CAL. PENAL § 211. In California, "[r]obbery requires the specific intent to deprive the victim of his or her property permanently." *In re Albert A.*, 47 Cal.App.4th 1004, 1007 (1996). "[A] bona fide belief of a right or claim to the property taken, even if mistaken, negates the element of felonious intent." *Id*. at 1008 (internal quotations omitted).

In this case, Petitioner argues that there was insufficient evidence to support his robbery conviction because he had a good faith claim of right to the property in question and he did not intend to keep the property permanently. Viewing the evidence in the light most favorable to the prosecution, and for the reasons described by the California Court of Appeal, it is apparent that

1   there was sufficient evidence from which a rational trier of fact could have found beyond a

2   reasonable doubt that Petitioner was guilty of the robbery charge.  Although Petitioner argues that

3   he presented substantial evidence at trial in support of his belief that he had a good faith claim of

4   right to the property in question, as well as his claim that he did not intend to keep the property

5   permanently, evidence contradicting both of Petitioner's claims exists in the record.  This court must

6   defer to the presumption that the jury resolved any conflicting evidence in the record in favor of the

7   prosecution.  *Wright*, 505 U.S. at 296-97.  That Petitioner can construct from the evidence

8   alternative scenarios at odds with the verdict does not mean that the evidence was insufficient to

9   support his conviction.  The state court opinion rejecting Petitioner's argument is a reasonable

10  construction of the evidence in this case and is not contrary to or an objectively unreasonable

11  application of clearly established federal law.  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002);

12  28 U.S.C. § 2254(d)(1).  Accordingly, Petitioner is not entitled to habeas corpus relief on his claim

13  that the evidence introduced at his trial was insufficient to support his robbery conviction.

14  **B.      Duty to Instruct on the Claim of Right Defense**

15          Petitioner claims that the trial court violated his federal right to due process of the

16  law by failing to sua sponte instruct the jury on the claim of right defense in relation to the robbery

17  charge.  The California Court of Appeal, Third Appellate District, considered and rejected

18  Petitioner's claim on the merits, explaining its reasoning as follows:

19              Defendant claims the trial court erred by not instructing the jury sua
            sponte on the claim-of-right defense.  Although defense counsel did
20          not request to have the jury instructed on the defense, he did inform
            the court of his intention to argue that [Defendant's] monetary
21          contribution to the family meant he was not guilty.  Defendant argues
            that the trial court, understanding the state of the evidence as
22          discussed above, and knowing counsel's intention to assert the
            defense, had a duty to instruct sua sponte on the claim-of-right
23          defense, and its failure to do so constitutes prejudicial error.  We
            disagree.
24
                "'[A] trial court is not required to instruct on a claim-of-right defense
25          unless there is evidence to support an inference that [defendant] acted
            with a subjective belief he or she had a lawful claim on the property.'
26          . . . [T]he court need not give the requested instruction where the

14

supporting evidence is minimal or insubstantial." (*People v. Barnett* (1998) 17 Cal.4th 1044, 1145, italics omitted.)  However, where the supporting evidence is substantial, the court must instruct sua sponte on the defense.  (*People v. Creath* (1995) 31 Cal.App.4th 312, 319.)

As we concluded above, there is no substantial evidence to support an inference that defendant took the checkbook and Johnson's phone with a good faith belief in a lawful claim to those items.  Defendant knew the checkbook and Johnson's phone belonged to Johnson.

Indeed, when looked at as a whole, the evidentiary record indicates defendant took these items because he knew they were *not* his, and that by taking them, he could control Johnson's behavior and leverage her not to report him to the police for violating the restraining order.  If he genuinely though the checkbook and Johnson's phone were his, he would not have attempted to take them on separate occasions only when at risk of Johnson reporting him to the police.

In addition, defendant's defense against the robbery charge at trial was not based on his claim of right.  Although he indicated he would claim innocence as a result of contributing money, he actually claimed innocence based on the fact he did not possess the items sufficiently long so as to deprive Johnson of a major portion of their value or enjoyment.  That was to be the "crux argument," and CALCRIM No. 1600 was adequate in his opinion to address that defense.

Insubstantial evidence in the record supported the claim-of-right defense.  Thus, the trial court was under no obligation to instruct on the defense sua sponte.  (*People v. Shelmire*, (2005) 130 Cal.App.4th 1044, 1054-1055.)

(Lodged Doc. 5 at 16-18.)

A challenge to jury instructions does not generally state a federal constitutional claim. *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197 (9th Cir.1983).  Federal due process, however, requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479 (1984).  Therefore, a criminal defendant is entitled to a jury instruction for "any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  *Mathews v. United States*, 485 U.S. 58, 63 (1984).  *See also Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000)

1  (holding that it was error to deny defendant's request for instruction on simple kidnaping where such

2  instruction was supported by the evidence).  This right is limited to situations where "the theory is

3  legally cognizable and there is evidence upon which the jury could rationally find for the defendant."

4  *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009).

5     Where, as here, a petitioner challenges the failure to give an instruction, his burden

6  is "especially heavy," because "[a]n omission, or an incomplete instruction is less likely to be

7  prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See*

8  *also Villafuerte v. Stewart*, 111 F.3d 616. 624 (9th Cir. 1997).  Moreover, to the extent that

9  Petitioner rests his claim on a duty to give an instruction sua sponte under the rules of state law, he

10  has not stated a federal claim.   Indeed, in the failure to give a lesser included instruction context,

11  the Ninth Circuit has held in non-capital cases that the failure to give the instruction states no federal

12  claim whatsoever.  *James v. Reece*, 546 F.2d 325, 327 (9th Cir. 1976).

13     Thus, in order to violate federal due process, the impact on the proceeding from the

14  failure to give an instruction sua sponte must be of a substantial magnitude.  Federal habeas corpus

15  relief is available only "for jury instruction errors that 'so infected the entire trial that the resulting

16  conviction violates due process,' thus rendering the trial fundamentally unfair."  *Townsend v.*

17  *Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

18  In order to prevail upon his claim that the trial court failed to give an instruction, Petitioner must

19  demonstrate that the alleged failure had a "substantial and injurious effect in determining the jury's

20  verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  In other words, Petitioner is required

21  to show that there is a "reasonable probability" that, had the instruction been given, the jury would

22  have reached a different verdict.  *Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006).

23     For the reasons stated by the California Court of Appeal, the trial court's failure to

24  sua sponte instruct on the claim of right defense did not violate fundamental fairness.  The denial

25  of this claim by the California Court of Appeal was not contrary to or an unreasonable application

26  of clearly established federal law.  Accordingly, Petitioner's claim is without merit.

## C.     Evidence of Prior Misdemeanor Conviction

Petitioner claims that the trial court improperly admitted evidence of his October 2005 misdemeanor conviction under CAL. EVID. CODE § 1101(b) because a fact finder could not reasonably infer that facts common to the prior conviction and the commitment offense revealed a general plan or scheme on Petitioner's part.[4]   The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on the merits, explaining its reasoning as follows:

> The trial court admitted evidence of defendant's prior spousal battery conviction from October 2005 under Evidence Code section 1101, subdivision (b), as proof of motive and a common scheme or plan. Defendant contends that evidence of the October 2005 incident as it relates to the robbery charge is relevant only to prove his propensity to be controlling, and therefore was erroneously admitted.   We disagree.
>
> We review a trial court's admission of past crimes for an abuse of discretion.  (*People v. Lenart* (2004) 322 Cal.4th 1101, 1123.)  The trial court's decision to admit such evidence is entitled to deference. (*People v. Harris* (1998) 60 Cal.App.4th 727, 736.)
>
> Evidence of prior crimes is admissible to prove a fact other than the defendant's propensity to commit the present crime. (Evid. Code, § 1101, subd. (b).)   Prior crimes may be admitted to prove a defendant's motive, opportunity, intent, preparation, plan,

---

[4] Section 1101 of the California Evidence Code provides as follows:

(a) Except as provided in this section and in Sections 1102, 1103, 1108, and 1109, evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of a specific instance of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion.

(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act.

(c) Nothing in this section affects the admissibility of evidence offered to support or attack the credibility of witnesses.

knowledge, or identity.  (*Ibid*.)

In October 2005, defendant was in the beginning stages of "flipping out."  He was accusing Johnson of being unfaithful.  He took her car keys to prevent her from leaving the house.  When she left the house anyway, he followed her and tried to take her purse in order to get her checkbook.  The prosecutor argued that evidence of the misdemeanor was relevant to prove "the kind of controlling physical behavior that [defendant] has exhibited time and again and is similar in many aspects to this incident . . . ."

The trial court found these facts to be "very similar" to the incident at issue in this case "with respect to his former significant other: controlling, attempting to keep her confined within the home, taking away her means of communication for assistance, her means of escape through transportation, maintaining control of her purse.  And that's highly probative under both propensity and intent . . . ."

When the court instructed the jury, however, it stated the evidence was admitted for the limited purpose of "deciding whether or not the defendant has a motive to commit the offenses alleged in this case or the defendant had a plan or scheme to commit the offenses alleged in this case."

Defendant claims the evidence was admitted solely for purposes of propensity.  He argues the evidence could not be admitted to show a common plan or scheme because his actions in both instances were dissimilar, and they arose impulsively and spontaneously from an undefined mental disorder, not the result of a general plan.  We disagree.[FN6]

> FN6   No party introduced any expert testimony at trial to show the defendant suffered from a mental disorder. Defendant makes the assertion here based on Johnson's lay testimony that defendant at times was paranoid and delusional.

To be admissible to show a common plan or scheme to the charged crime, evidence of a past crime must share "striking similarities" with the charged crime.  (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1020.)  The past crime must demonstrate "'a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' [Citation]."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393-394.)  In other words, the notion of a common plan refers to a methodology or peculiar behavior pattern pursued in the performance of repeated criminal acts. (1 Witkin, Cal. Evidence (4th ed. 2000) Circumstantial Evidence, § 92, p. 434; *People v. Chambers* (1964) 231 Cal. App.2d 23, 30-31.)  Similar spontaneous acts by themselves do not constitute a common plan.  (*People v. Scheer*, *supra*, 68 Cal.App.4th at p. 1021.)

18

Here, the facts were sufficient for the court to infer a common plan. Johnson was the victim in both instances.  Both offenses occurred at Johnson's home in the early hours of the morning.  In both cases, defendant and Johnson had an argument and defendant accused Johnson of being unfaithful.  In both cases, defendant tried to prevent Johnson from leaving the house by taking her keys.  And, in both cases, defendant tried to take Johnson's purse by force to get her checkbook.

Moreover, defendant's action was not spontaneous. He knew he was wrong by going to Johnson's home and staying there in violation of a restraining order.  He initiated the second confrontation in the early hours of the morning, waking Johnson and her daughter after they had already gone to bed.  This indicates his actions were not spontaneous or spur-of-the-moment reactions.

A fact finder could reasonably infer that these facts, common to both instances, reveal a general plan or scheme that defendant follows when trying to exert control over Johnson to obtain her checkbook. The trial court did not abuse its discretion in allowing the jury to consider the prior crime in determining if it demonstrated a common plan or scheme.

Defendant also argues the evidence could not be admitted to show motive, but we disagree with this assertion as well.  To be admissible as proof of motive, evidence of a prior offense must have a direct relationship to the charged offense.   The evidence is admissible because the prior offense explains why the defendant committed the charged offense.  (*People v. Daniel* (1991) 52 Cal.3d 815, 856-857.)

Such evidence exists here.  In October 2005, when defendant accused her of being unfaithful, tried to prevent her from leaving the house, and tried to take her purse, Johnson sprayed him with mace and called the police.  A fact finder could infer that this poor experience may explain why, in the second instance, defendant became violent toward Johnson, took her checkbook, and maintained control of the cell phones.  He wanted to obtain money, and to prevent Johnson from harming him and calling the police again.  The trial court did not abuse its discretion in permitting the jury to decide whether the prior incident revealed defendant's motive in committing the charged offense.

(Lodged Doc. 5 at 16-22.)

A state court's evidentiary ruling is not subject to federal habeas corpus review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  *See also Pulley v. Harris*, 465 U.S. 37, 41 (1984);

19

1    *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991).  Admission of evidence violates due

2    process only if "there are no permissible inferences the jury may draw from the evidence." *Jammal*,

3    926 F.2d at 920.  Even then, evidence must "be of such quality as necessarily prevents a fair trial."

4    *Id*. (quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463,  1465).  Thus, in order to establish that

5    evidence admitted by the trial court pursuant to section 1101 of the California Penal Code violated

6    his due process rights, Petitioner bears the heavy burden of demonstrating that the admission of the

7    challenged evidence "offends some principle of justice so rooted in the traditions and conscience

8    of our people to be ranked as fundamental." *Patterson v.  New York*, 432 U.S. 197, 201 (1977)

9    (internal citations omitted).

10          The inquiry on federal habeas corpus review is whether admission of the evidence

11   was "arbitrary or so prejudicial that it rendered  the  trial  fundamentally  unfair." *Romano  v.*

12   *Oklahoma*, 512 U.S. 1, 12-13 (1994).  *See also Jammal*, 926 F.2d at 919 ("[T]he issue for us,

13   always, is whether the state proceedings satisfied due process; the presence or absence of a state law

14   violation is largely beside the point."); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986) (habeas

15   corpus  relief  unavailable  unless  admission  of  evidence  of  prior  bad  acts  was  arbitrary  or

16   fundamentally unfair).  Under Ninth Circuit law, the question is "whether inferences relevant to a

17   fact of consequence may be drawn from each piece of the evidence, or whether they lead only to

18   impermissible inferences about the defendant's character." *McKinney v. Rees*, 993 F.2d 1378, 1381

19   (9th Cir. 1993).  *See also Jamal*, 926 F.2d at 920 ("Evidence introduced by the prosecution will

20   often raise more than one inference, some permissible, some not; we must rely on the jury to sort

21   them out in light of the court's instructions.")*; United States v. LeMay*, 260 F.3d 1018, 1027 (9th

22   Cir. 2001) (Evidence of prior similar crimes "will only sometimes violate the constitutional right

23   to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little

24   relevance it might have.").

25

26          Petitioner's trial was not rendered fundamentally unfair by the admission of evidence

of his prior conviction.  The record reflects that the trial court held a hearing on the prosecutor's pre-trial motion in limine to introduce evidence of several instances of Petitioner's prior conduct.  With regard to Petitioner's October 2005 conviction for misdemeanor spousal battery, the court concluded that it was relevant, appropriate, and admissible under California law.  (Reporter's Transcript on Appeal (RT) at 18-30).  Following the close of evidence, the trial court instructed the jury as follows:

> The People presented evidence of other conduct - - other evidence - - excuse me.  The People presented evidence of other conduct by the defendant on October 20, 2005 that was not charged in this case. You may consider this evidence only if the People have proved by preponderance of the evidence that the defendant in fact committed the conduct.  Proof by a preponderance of the evidence is different - - is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that - - that the fact is true.  If the People have not met this burden, you must disregard this evidence entirely.  If you decide that the defendant committed the conduct, you may but are not required to consider the evidence for the limited purpose of deciding whether or not the defendant has a motive to commit the offenses alleged in this case or the defendant has a plan or scheme to commit the offenses alleged in this case.
>
> In evaluating the evidence, consider the similarity or lack of similarity between the uncharged conduct and the charged offenses. Do not consider this evidence for any other purpose except for the limited purpose as stated herein.  Do not conclude from this evidence that the defendant has a bad character or is disposed to commit a crime.  If you conclude that the defendant committed the uncharged conduct, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of a charged offense or offenses.  The people must still prove each element of every charge beyond a reasonable doubt.

(RT at 422-23).

Although evidence of Petitioner's October 2005 conviction was potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself."  *LeMay*, 260 F.3d at 1030.  These instructions did not compel the jury to draw an inference of propensity.  The jury instructions, viewed in their entirety, correctly informed Petitioner's jury for which purposes they could consider evidence of Petitioner's prior conduct, and that the prosecution had the burden

of proving all the elements of the crimes against Petitioner beyond a reasonable doubt.  The jury is presumed to have followed these instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Brown v. Ornoski*, 503 F.3d 1006, 1018 (9th Cir. 2007).

Moreover, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001).  In fact, the Supreme Court has expressly left open this question. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). *See also Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that the propensity evidence introduced against the defendant did not violate his right to due process); *Alberni v. McDaniel*, 458 F.3d 860, 863-67 (9th Cir. 2006) (rejecting the petitioner's claim that the introduction of propensity evidence violated his due process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not been clearly established by the Supreme Court, as required by AEDPA"); *United States v. LeMay*, 260 F.3d 1018 (9th Cir. 2001) (Federal Rule of Evidence 414, permitting admission of evidence of similar crimes in child molestation cases, under which the test for balancing probative value and prejudicial effect remains applicable, does not violate the Due Process Clause).

Lastly, under the circumstances as described above, any alleged error in admitting evidence of Petitioner's 2005 conviction did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See also Penry v. Johnson*, 532 U.S. 782, 793-96 (2001).  Any threat of prejudice flowing from admission of evidence of Petitioner's October 2005 conviction was mitigated by the trial court's instructions directing the jury to consider the conviction only for limited purposes and not to show that Petitioner

was a person of bad character or that he had a disposition to commit crimes.  Moreover, significant evidence, aside from Petitioner's 2005 conviction, exists in the record in support of the jury's verdict.  For example, both Johnson and her daughter offered trial testimony, summarized in subsection (III), above, with regard to the events and actions upon which Petitioner's convictions are based.  Both Johnson's December 13, 2005 restraining order against Petitioner and the transcript of Johnson's 9-1-1 emergency call placed the early morning hours of January 8, 2006 were admitted into evidence.  In addition, Officer Jarrett Edgar, who responded with a partner to Johnson's residence following her 9-1-1 emergency call, testified at trial regarding his observations upon arriving at the residence, as well as his subsequent interactions with both Petitioner and Johnson.  Accordingly, the denial of Petitioner's claim by the California Court of Appeal was not contrary to or an unreasonable application of clearly established federal law.  Petitioner is not entitled to habeas corpus relief on this claim.

**D.    Concurrent Sentences for Counts Three and Four (Making Criminal Threats and False Imprisonment)**

Petitioner claims that the trial court improperly imposed concurrent sentences for counts three and four, making criminal threats and false imprisonment.  According to Petitioner, his conviction for either count three or count four should have been stayed under section 654 of the California Penal Code because they stemmed from a single course of conduct.

The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on the merits, explaining its reasoning as follows:

> Defendant contends the trial court violated section 654 by imposing concurrent terms of two years each on counts 3 (criminal threats) and 4 (false imprisonment) instead of staying imposition of sentence on one of them.  He argues that all the acts alleged as to these two counts occurred in an indivisible course of conduct with a single objective – preventing Johnson from contacting the police.  We disagree.
>
> When a defendant engages in a continuous course of conduct comprising an indivisible transaction containing a single criminal objective, multiple punishments are precluded.  (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1208.) "It is [the] defendant's intent and objective, not the temporal proximity of his offenses, which

23

determines whether the transaction is divisible." (*People v. Harrison*, (1989) 48, Cal.3d 321, 335.)  Multiple punishments are permitted if the defendant has more than one objective.  (*Ibid*.)

A trial court's finding that a defendant had multiple criminal objectives is reviewed for abuse of discretion and will be upheld if supported by substantial evidence.  (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466.)

In this case, defendant's threats to kill Johnson were made to prevent Johnson from calling the police.  Defendant made these threats after he gained possession of Johnson's property.  In contrast, the acts that constituted false imprisonment – taking her shoes, closing the door when she tried to leave, putting his hand over her mouth when she tried to scream – were consistent with a second objective to keep Johnson under his control, force her to face his accusations of infidelity, and "talk" about whatever was plaguing him.  The trial court did not abuse its discretion when it imposed concurrent sentences for counts three and four.

(Lodged Doc. 5 at 22-24.)

As previously discussed, a federal habeas corpus petitioner must assert a violation of the Constitution, federal law, or treaties of the United States in order to be entitled to relief.  *See Estelle*, 502 U.S. at 67-68.  *See also Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (habeas relief not available for state law errors that are not of a constitutional dimension).  Petitioner's claim that the term imposed for either count three or four should have been stayed at sentencing under state law thus fails to allege a federal violation for which relief can be granted.  *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus.");  *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989) (alleged violation of section 654 is a state law claim not cognizable in a federal habeas corpus proceeding).  *See also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas corpus.");  *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005).  Accordingly, Petitioner is not entitled to habeas corpus relief on this claim.

/////

## VI.  CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is hereby DENIED.  If Petitioner wishes to appeal this decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C. § 2253 "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).  A certificate of appealability should be granted for any issue that Petitioner can demonstrate is "'debatable among jurists of reason,'" could be resolved differently by a different court, or is "'adequate to deserve encouragement to proceed further.'"  *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).  In this case, Petitioner failed to make a substantial showing with respect to any of the claims presented, and a certificate of appealability is therefore denied.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED: March 18, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

25